# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

THOMAS F. ARMOUR,  )
Individually and on behalf of all others  )
similarly situated,  )
                                     **Plaintiff,**  )
                                                 )  **CIVIL ACTION**
v.  )
                                                 )  No. 11-2034-KHV
TRANSAMERICA LIFE INSURANCE  )
COMPANY, formerly known as PFL Life  )
Insurance Company,  )
  )
                                     **Defendant.**  )
_____)

## MEMORANDUM AND ORDER

Thomas F. Armour, individually and on behalf of all others similarly situated, originally filed this action in the District Court of Johnson County, Kansas. Transamerica Life Insurance Company removed the case alleging original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). The matter is now before the Court on <u>Defendant Transamerica Life Insurance Company's Motion To Transfer Case To Judge Eric F. Melgren</u> (Doc. #13) filed February 17, 2011 and <u>Plaintiff's Motion To Remand</u> (Doc. #15) filed February 18, 2011. For the following reasons, the Court overrules both motions.[1]

As a preliminary matter, the Court overrules defendant's motion to transfer. Defendant asks the Court to transfer the case to Judge Eric F. Melgren because he decided a similar jurisdictional dispute between the same parties in a previous case which plaintiff voluntarily dismissed. See <u>Armour v.</u>

---

[1] Defendant also requests oral argument. See <u>Memorandum In Opposition To Plaintiff's Motion To Remand</u> (Doc. #21). The Court hereby overrules defendant's request pursuant to D. Kan. Rule 7.2, which provides that the "court ordinarily will resolve motions on the parties' written briefs or memoranda."

Transamerica Life Ins. Inc., No. 10-2136-EFM, 2010 WL 4180459 (D. Kan. Oct. 20, 2010). D. Kan. Rule 40.1 provides that "[i]n the interest of justice or to further the efficient disposition of the business of the court, a judge may return a case to the clerk for reassignment or, with the approval of the chief judge, may transfer the case to another judge who consents to such transfer." The undersigned judge, in her discretion, declines to transfer this case. The Court therefore overrules defendant's motion and proceeds to the merits of plaintiff's motion to remand.

**Legal Standard**

A defendant may remove a civil action filed in state court if the plaintiff could have brought the action in federal court. See 28 U.S.C. § 1441(a). Defendant argues that plaintiff's action is removable because the Court has original jurisdiction under CAFA. CAFA gives federal district courts original jurisdiction over class actions in which "any member of a class of plaintiffs is a citizen of a State different from any defendant" and "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests, and costs." 28 U.S.C. § 1332(d)(2)(A). Here, plaintiff only disputes whether the petition satisfies the $5,000,000 amount-in-controversy requirement.

Because federal courts are courts of limited jurisdiction, there is a presumption against removal. Ortiz v. Biscanin, 190 F. Supp.2d 1237, 1241 (D. Kan. 2002). The Court narrowly construes removal statutes, id., and the removing party has the burden of setting forth facts in the notice of removal that satisfy the Court's jurisdictional requirements, Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995). All doubts must be resolved in favor of remand. Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982); Ortiz, 190 F. Supp.2d at 1241.

The amount in controversy is not the amount plaintiff will recover, but rather "an estimate of the amount that will be put at issue in the course of the litigation." McPhail v. Deere & Co., 529 F.3d 947,

956 (10th Cir. 2008). Ordinarily, the allegations of the state-court petition determine the amount in controversy. Laughlin, 50 F.3d at 873. If they do not support federal court jurisdiction, however, defendant must establish jurisdictional facts which show that the amount in controversy may exceed $5 million. See McPhail, 529 F.3d at 953. Plaintiff "cannot avoid removal merely by declining to allege the jurisdictional amount," but in the absence of an explicit demand for more than the jurisdictional amount, defendant must show how much is in controversy through other means. Id. at 955. Defendant must affirmatively establish jurisdiction by proving jurisdictional facts that made it possible that the jurisdictional amount was in play. Id. Defendant may do so through interrogatories obtained in state court before removal, or affidavits or other evidence submitted in federal court after removal. Id. at 956. If defendant establishes facts that support federal court jurisdiction, defendant is entitled to stay in federal court unless it is "legally certain" that less than the jurisdictional amount is in controversy. Id. at 954.

**Factual And Procedural Background**

Plaintiff resides in Leawood, Kansas and defendant is an Iowa corporation with its principal place of business in Iowa. Plaintiff and putative class members purchased and renewed Long-Term Care ("LTC") insurance policies from defendant. The petition defines the class as "all Kansas residents who purchased an LTC policy sold by Transamerica or its predecessor PFL." Petition, Doc. #5, Ex. 1 ¶ 33. Plaintiff alleges that he and others suffered damages due to defendant's negligence, fraud, negligent misrepresentations, breach of duty of good faith and fair dealing, breach of contract and unjust enrichment. Plaintiff contends that when defendant sold the policies, it knew that the premiums were based on actuarial defects and that it planned to shift the cost of these defects to the policyholders by raising premiums.

This case represents round two of the parties' jurisdictional dispute. On February 5, 2010, plaintiff filed a class action in the District Court of Johnson County, Kansas asserting claims similar to those asserted here. Defendant removed the action to this Court and plaintiff moved to remand. See Armour, 2010 WL 4180459 at *1. In that case, Judge Melgren concluded that the petition put at issue all premium increases over the life of each policy, which exceeded the $5 million jurisdictional threshold under CAFA. See id. at *9. Two days after Judge Melgren's decision, plaintiff voluntarily dismissed the action. Two months later, plaintiff filed the instant petition, which expressly seeks to avoid federal jurisdiction by limiting its claims for damages. Defendant removed the case and plaintiff again asks the Court to remand it.

Here, the petition states that it seeks damages only for premium increases due to a "known actuarial defect." Petition, Doc. #5, Ex. 1 ¶¶ 7-12. It defines a "known actuarial defect" as "an unreasonable actuarial assumption" that defendant relied on to "increase premium rates." Id. ¶ 8. Plaintiff further limits such defects to an unreasonable lapse, morbidity or mortality assumption, or an unreasonable projection of the number of future claims. Id. The petition states that there "may be other reasons for increasing premium rates," i.e. reasons unrelated to known actuarial defects, "but those reasons are not part of the damages plaintiff seeks in this lawsuit." Id. It further alleges that "some of the rate increases on the LTC policies at issue in this lawsuit are legitimate and supportable," such as "rate increases due to inflation." The petition "expressly excludes those portions, if any, of a premium increase." Id. ¶ 9.

The petition states that the "total amount of increases in premiums on the LTC policies at issue in this lawsuit is $6,441,652," id., and that "the total amount of increases in premiums on the LTC policies at issue in this lawsuit is approximately $2.5 million," id. ¶ 11. Presumably, the $2.5 figure is

-4-

the amount of premium increases that plaintiff alleges are attributable to known actuarial defects. Defendant's notice of removal, and the Jones Declaration attached thereto, state that as of December 31, 2010, defendant had collected $33,656,813 from policyholders who purchased policies in Kansas through 2001. Notice Of Removal (Doc. #1) ¶ 26; Jones Declaration ¶ 10. The $6,441,652 amount, they state, is the annual amount of rate increases which the Kansas Department of Insurance ("DOI") approved. Doc. #1 ¶ 27; Jones Declaration ¶ 13.

## Analysis

Plaintiff asserts that the amount in controversy is less than the $5 million CAFA requirement because the petition seeks damages only for premium increases caused by known actuarial defects, which plaintiff estimates to be $2.5 million. Defendant argues that plaintiff's purported limitation is no limitation at all, and that it puts more than $33 million of premium increases in play.

**I. Burden And Method Of Proof**

**A. Burden Of Proof**

It is well established that defendant bears the burden of establishing that the petition puts in controversy an amount that exceeds the $5 million jurisdictional minimum. See McPhail, 529 F.3d at 954-55. The standard of proof that applies (e.g., preponderance of evidence or reasonable probability), as well as the method of proof (e.g., admissible evidence, sworn affidavits or allegations), are less clear. Both parties rely on the preponderance of the evidence standard articulated by the Tenth Circuit in McPhail. In McPhail, however, the complaint was "silent" with respect to the amount in controversy. Id. at 954. Here, in contrast, plaintiff expressly alleges an amount in controversy which is less than the jurisdictional amount. In pre-McPhail cases where the plaintiff pled an amount in controversy which was less than the jurisdictional amount, the Court has applied a higher standard of reasonable

probability. See, e.g., Eatinger v. BP Am. Prod. Co., 524 F. Supp.2d 1342, 1347 (10th Cir. 2007).[2] Here, the Court need not determine which standard applies because defendant has satisfied its burden under either one.

### B. Method Of Proof

The parties disagree over the method of proof, i.e. the type of evidence which defendant must produce to support its assertion that plaintiff's petition places in controversy a sum that exceeds $5 million. Relying on McPhail, plaintiff argues that defendant must offer "admissible" or "summary-judgment-type" evidence. See 529 F.3d at 954, 956. Defendant asserts that it need not submit evidence in a form that would be admissible at trial.

Under McPhail, defendant may satisfy its burden "by contentions, interrogatories or admissions in state court; by calculation from the complaint's allegations; by reference to the plaintiff's informal estimates or settlement demands; or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands." Id. at 954. General allegations are insufficient, as are dollar estimates linked to an erroneous reading of plaintiff's complaint. Id. at 955.

To support the assertions in its notice of removal, defendant attached the Jones Declaration, which is a sworn statement by defendant's Senior Vice President and Chief Actuary. See Doc. #1-2. Plaintiff asserts that the Court should not rely on the Jones Declaration because it contains conclusory

---

[2] In Freebird, Inc. v. Merit Energy Co., a post-McPhail case in which the plaintiff expressly pled that the amount in controversy did not exceed the jurisdictional minimum, Judge Wesley E. Brown noted this very issue but did not decide which standard of proof applied. 597 F. Supp.2d 1245, 1249 (10th Cir. 2009). Rather, he concluded that "[r]egardless of what standard this Court were to apply – preponderance of the evidence, reasonable probability, reasonable certainty, legal certainty – the Defendant has failed to meet it." Id. at 1250.

statements without supporting data, facts, figures or calculations. See Coca-Cola Bottling of Emporia, Inc. v. S. Beach Beverage Co., 198 F. Supp.2d 1280, 1284; Freebird, 597 F.3d at 1249-50. The Court disagrees. Unlike in Coca-Cola Bottling and Freebird, the Jones Declaration contains specific, relevant data including the total number of policies in question, the amount collected as a result of premium increases associated with those policies, the manner in which it determined these figures and the reasons for the increases. See Jones Declaration.

The Jones Declaration is proper removal evidence and the Court may rely on it. See McPhail, 529 F.3d at 954. In addition to the declaration itself, defendant attached thereto five letters from defendant to the Kansas DOI regarding the reasons for the premium increases. Plaintiff asserts that the Court should not consider these letters because they are not admissible evidence. Because the declaration contains sufficient evidence to resolve the parties' dispute, the Court need not rely on the attached letters and this issue is moot.

## II.     Amount In Controversy

The "amount in controversy is not proof of the amount the plaintiff will recover," but rather "an estimate of the amount that will be put at issue in the course of litigation." McPhail, 529 F.3d at 956. Plaintiff's putative class includes "all Kansas residents who purchased an LTC policy sold by Transamerica or its predecessor PFL." Petition, Doc. #5, Ex. 1 ¶ 33. As of December 31, 2010, defendant had issued in Kansas, and Kansas residents owned, a total of 4,407 LTC policies. Jones Declaration ¶ 10. Defendant's notice of removal states that as of December 31, 2010, defendant had collected $33,656,813 attributable to rate increases, Doc. #1 ¶ 13; Jones Declaration ¶ 10, and that as of December 31, 2009, the Kansas DOI had approved premium rate increases of approximately $6,441,652 per year on the LTC policies in question. Doc. #1 ¶ 13; Jones Declaration ¶ 13.

Fairly read, the petition claims damages for relevant premium increases, i.e. increases due to known actuarial defects over the life of the policies in question, not just the increases from a single year. The petition alleges that the "total amount of increases in premiums on the LTC policies at issue in this lawsuit is $6,441,652." Petition ¶ 9. No other allegation confines plaintiff's damages to premium increases in just one year. The question, then, is how much of the total premium increases the petition puts at issue.

Defendant contends that the petition puts at issue all premium increases on the LTC policies at issue – more than $33 million. Plaintiff disagrees and argues that because the petition is limited to premium increases due to known actuarial defects, it puts at issue only $2.5 million. Plaintiff asserts that "any adult reasonably well-acquainted with the English language sharing defendant's views should turn in their literacy card and enroll in an elementary English reading class." Suggestions In Support Of Plaintiff's Motion To Remand (Doc. #16) at 4-5. The Court disagrees, and suggests that any lawyer who engages in such rhetoric should turn in his or her bar card and enroll in charm school.

It appears that plaintiff "is attempting to have it both ways" by "pleading an amount below the requisite amount in controversy" while "leaving the door open for the class to seek damages above the jurisdictional amount." Eatinger, 524 F. Supp.2d at 1348. Even though plaintiff limits his claims to damages for premium increases attributable to known actuarial defects, the petition leaves open the opportunity for plaintiff to assert that all premium increases were due to known actuarial defects. Thus, plaintiff's purported limitation on the amount at issue is no limitation at all. Two statements in the petition are telling. First, the petition states that "this class action lawsuit expressly excludes those portions, if any, of a premium increase arising from sound actuarial principles, including the actuarial impact of inflation." Petition ¶ 9 (emphasis added). Second, the petition states elsewhere that there

"may be other reasons for increasing premium rates" – reasons unrelated to known actuarial defects. Id. ¶ 8 (emphasis added). The petition does not rule out the fact that all the premium increases related to the policies at issue are due to known actuarial defects. The only concrete example that plaintiff gives of a "legitimate and supportable" basis for increasing premiums is inflation, but it is unclear whether inflation is included in the $33 million amount or how much of the increases are due to inflation. Notwithstanding plaintiff's strenuous objections and ad hominem attacks, the petition is fairly read as placing all premium increases at issue, and defendant has established them to be greater than $33 million.

Even if defendant's position requires an overly technical reading of the petition and places too much emphasis on the two provisions discussed above, defendant asserts an alternative fair reading of the petition. Under McPhail, defendant may establish the amount in controversy by relying on calculations based on allegations in the petition as well as plaintiff's informal estimates of the amount at issue. See McPhail, 529 F.3d at 954 (quoting Meridian Security Ins. Co. v. Sadowski, 441 F.3d 536, 541-42 (7th Cir. 2006) (Easterbrook, J.)). Here, defendant asserts that plaintiff's calculation of the damages at play – $2.5 million – is flawed. It notes that plaintiff based its estimation of damages on the annual amount of premium increases on the LTC policies at issue, not the total amount. In light of defendant's evidence, this is a fair reading of the petition.

Specifically, the petition alleges that it only puts at issue $2.5 million. The petition first alleges that the total amount of premium increases on the LTC policies at issue in this case is $6,441,652. Petition ¶ 9. It then alleges that "the total amount of increases in premiums on the LTC policies at issue in this lawsuit is approximately $2.5 million." Id. ¶ 11. To calculate the $2.5 million, plaintiff presumably estimated that a portion of the total premium increases were "legitimate and supportable,"

and then subtracted those increases from $6,441,652. According to plaintiff's calculations, it estimated that roughly 38.81 per cent of the total premium increases were due to known actuarial defects.[3] Plaintiff argues that the petition places only this portion of the increases in play.

The Jones Declaration establishes that the total amount of premium increases on the LTC policies at issue is $33,656,813 – not $6,441,652. Jones Declaration ¶ 10. The $6,441,652 figure which plaintiff uses is the amount of premium increases attributable to the policies at issue each year. Id. ¶ 13. As noted above, the petition fairly places at issue the relevant premium increases, i.e. increases linked to known actuarial defects, over the life of the policies at issue – not just the single-year amount. Therefore, even if plaintiff is correct and his petition places at issue only 38.81 per cent of the total premium increases, the amount at issue would still be $13,062,182,[4] which is clearly greater than the $5 million jurisdictional threshold under CAFA.

Based on a fair reading of the petition, defendant has established that the aggregate amount in controversy may exceed $5 million. Plaintiff must therefore demonstrate to a legal certainty that an amount less than $5 million is at issue. McPhail, 529 F.3d at 954. As noted above, plaintiff's arguments to this end are unavailing.[5]

---

[3] $2.5 million is roughly 38.81 per cent of $6,441,652.

[4] Dividing $2.5 million by $6,441,652 yields the ratio which plaintiff applied to determine the fraction of the total premium increases which are attributable to known actuarial defects. That fraction is roughly 38.81 per cent, and 38.81 per cent of $33,656,813 is $13,062,182.

[5] In addition to the arguments discussed above, plaintiff asserts that the Court should remand because his petition accommodates Judge Melgren's reasons for denying plaintiff's motion to remand in the first iteration of this case. For the reasons already stated, this does not change the Court's conclusion.
Defendant also argues that even if plaintiff's petition is limited to the $6,441,652, a fair reading of plaintiff's breach of contract claim (Count IV) places all of these premiums at issue. In light of the foregoing conclusion, the Court need not address this argument.

**IT IS THEREFORE ORDERED** that Defendant Transamerica Life Insurance Company's Motion To Transfer Case To Judge Eric F. Melgren (Doc. #13) filed February 17, 2011, be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion To Remand (Doc. #15) filed February 18, 2011, be and hereby is **OVERRULED**.

Dated this 4th day of May, 2011 at Kansas City, Kansas.

s/ Kathryn H. Vratil<br>
KATHRYN H. VRATIL<br>
United States District Judge