IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| THOMAS F. ARMOUR,<br>individually and on behalf of all others<br>similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>TRANSAMERICA LIFE INSURANCE<br>COMPANY, formerly known as PFL Life<br>Insurance Company,<br><br>                    Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION<br>)<br>)   No. 11-2034-KHV<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

For himself and on behalf of similarly situated individuals, Thomas F. Armour brings suit against Transamerica Life Insurance Company ("Transamerica") for fraud (Count I), negligent misrepresentation (Count II), violations of contractual duty of good faith and fair dealing (Count III), breach of contract (Count IV), unjust enrichment (Count V) and negligence (Count VI). Each count arises from the same alleged conduct: plaintiff contends that defendant intentionally designed long-term care ("LTC") insurance policies using flawed actuarial assumptions, sold these policies to plaintiff and other Kansas resident consumers without disclosing that premiums could increase, willingly lost money by intentionally under-pricing LTC policies for years, and ultimately instituted three premium increases that it had planned from the outset. Plaintiff filed suit on December 2, 2010 in the District Court of Johnson County, Kansas. On January 20, 2011, Transamerica removed the case to this Court alleging original jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B). See Notice of Removal (Doc. #1). This matter is before the Court on the Motion To Dismiss (Doc. #23) filed by Transamerica on June 15, 2011. Transamerica moves to dismiss plaintiff's petition because (1) it is barred by the filed rate doctrine and (2) each

of its counts fails to state a claim for relief. For the following reasons, the Court sustains the motion.

## **Legal Standards**

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. Id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 129 S. Ct. at 1950.

The Court need not accept as true those allegations which state only legal conclusions. See id.; Hall v. Bellmon, 935 F.3d 1106, 1110 (10th Cir. 1991). Plaintiff bears the burden of framing his complaint with enough factual matter to suggest that he is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim when he pleads factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. Iqbal, 129 S. Ct. at 1949. Plaintiff must show more than a sheer possibility that defendants have acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendants' liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Iqbal, 129 S. Ct. 1949. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not "shown" – that the pleader is entitled to relief. Id. at 1950. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Oklahoma, 519 F.3d 1242,

1248 (10th Cir. 2008) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008)).

**Factual and Procedural Background**

The petition alleges the following facts:

Plaintiff resides in Leawood, Kansas and defendant is an Iowa corporation with its principal place of business in Iowa. Until March 1, 2011, Transamerica was known as PFL Life Insurance Company. Plaintiff and putative class members purchased and renewed LTC insurance policies from PFL or Transamerica.[1] Plaintiff purchased his policy from PFL in 1996, at age 64. At the time, his annual premium was $1,143.00, or $95.25 per month. Transamerica raised his annual premium three times: on December 23, 2001, the premium increased to $1,487.00 annually, or $123.92 per month; in 2004, it increased to $1,911.36 annually, or $159.28 per month; in 2005, plaintiff's annual premium increased to $2,579.52, or $214.96 per month. Although plaintiff knew his premium could change, he alleges that Transamerica's LTC policies "were targeted at retirees on fixed incomes who could not reasonably be expected to afford rate increases." Petition, Doc. #5, Ex. 1 ¶ 27.

Plaintiff contends that Transamerica sold these policies without disclosing that it planned to shift "known actuarial defects" to the policyholders. Plaintiff defines a "known actuarial defect" as "an unreasonable actuarial assumption utilized by defendants to increase premium rates and limited to one or more of the following: a lapse assumption, a morbidity assumption, a mortality assumption, or a projection of the number of future claims." Id. ¶ 8. Plaintiff seeks damages for the rate increases attributable to known actuarial defects, but not for legitimate rate increases. Plaintiff provides no more facts about the known actuarial defects, but alleges that when defendant sold the policies, it knew that the premiums were based on actuarial defects and planned to shift the cost of

---

[1] The petition defines the proposed class as "all Kansas residents who purchased an LTC policy sold by Transamerica or its predecessor PFL." Petition, Doc. #5, Ex. 1 ¶ 33.

these defects to the policyholders by raising premiums.

Plaintiff acknowledges that Transamerica filed actuarial memoranda and other documents with the Kansas Insurance Department in support of its rate increase requests, but alleges that these filings did not disclose the known actuarial defects. Plaintiff alleges that he and others suffered damages due to defendant's fraud, negligent misrepresentation, breach of duty of good faith and fair dealing, breach of contract, unjust enrichment and negligence.

This is the second time plaintiff has filed his case. On February 5, 2010, plaintiff filed a class action in the District Court of Johnson County, Kansas asserting claims similar to those he asserts here. Defendant removed the action to this Court and plaintiff moved to remand. See Armour v. Transamerica Life Ins. Inc., No. 10-2136-EFM, 2010 WL 4180459, at *1 (D. Kan. Oct. 20, 2010). In that case, Judge Eric Melgren concluded that the petition put at issue all premium increases over the life of each policy, which exceeded the $5 million jurisdictional threshold under CAFA, and thus overruled the motion to remand. See id. at *9. Two days after Judge Melgren's decision, plaintiff voluntarily dismissed the action. Two months later, plaintiff filed the instant petition, which expressly seeks to avoid federal jurisdiction by limiting its claims for damages. Defendant removed the case and plaintiff again asked the Court to remand. The Court overruled plaintiff's motion to remand on May 4, 2011 (Doc. #22).

## Analysis

Transamerica asserts that plaintiff's petition fails to state a claim because the filed rate doctrine precludes lawsuits against it, a regulated entity, that challenge the propriety of a rate that Transamerica filed with the Kansas Insurance Department. Alternatively, Transamerica sets forth a number of ways in which the individual counts fail to state a claim. Plaintiff argues that the filed rate doctrine does not apply to this case, but that even if it did, the Court may not decide the issue on a Rule 12(b)(6) motion because defendant submitted documents outside the pleadings that the

4

Court may not consider without converting the motion to one for summary judgment.

## I.     Filed Rate Doctrine

To the extent that plaintiff seeks money damages as relief for excessive rates or insurance premiums, the filed rate doctrine bars suits against regulated entities. See Coll v. First Am. Title Ins. Co., 642 F.3d 876, 886 (10th Cir. 2011). The doctrine holds that a "filed rate," or one approved by the governing regulatory agency, is per se reasonable and unassailable in judicial proceedings by a ratepayer. Wegoland Ltd. v. Nynex Corp., 27 F.3d 17, 18 (2d Cir. 1994). Although the doctrine originally applied to federal regulatory agencies, e.g., Keogh v. C. & N. Ry. Co., 260 U.S. 156 (1922) (Interstate Commerce Commission); Ark. La. Gas Co. v. Hall, 453 U.S. 571 (1981) (Federal Energy Regulatory Commission), it applies with equal force to rates set by state regulatory agencies, e.g., Taffet v. Southern Co., 967 F.2d 1483 (11th Cir. 1992) (state public service commissions). The doctrine stands for the proposition that because an administrative agency is vested with the authority to determine what rate is just and reasonable, courts should not adjudicate what a reasonable rate might be in a collateral lawsuit. Amundson & Assocs. Art Studio, Ltd. v. Nat'l Council on Comp. Ins., Inc., 26 Kan. App. 2d 489, 498, 988 P.2d 1208 (Kan. Ct. App. 1999).

Kansas law recognizes the filed rate doctrine, id., 26 Kan. App. 2d 493-505, which applies across a spectrum of industries and to a variety of claims. The doctrine has two goals: (1) to eliminate discrimination among ratepayers (the "non-discrimination" strand); and (2) to prevent courts from engaging in rate-making that is the province of regulatory agencies (the "non-justiciability" strand). See MCI Telecommc'ns Corp. v. Value Call Int'l, Inc., 988 F. Supp. 1376, 1387 & n.24 (D. Kan. 1997), vacated, March 6, 1998. Rather than look at the conduct underlying the suit, a court assesses the impact which its decision will have on agency procedures and rate determinations. If plaintiff were to succeed on its damage claim and the Court's resulting

5

determination would impact the agency's rate determination, the doctrine applies.[2]  Coll, 642 F.3d at 889-90.  Despite the sometimes harsh and seemingly merciless effect of this doctrine, courts have not wavered in its application.  MCI, 988 F. Supp. at 1390.

Plaintiff correctly argues that the Court's first step in determining whether the filed rate doctrine applies is to examine the particular rate-making scheme at issue.  According to plaintiff, the doctrine applies only if the legislative scheme calls for the agency at issue to set rates and allows public input into rate determination.  The Court disagrees.  The distinction between the power to establish and fix rates, as opposed to the power to disapprove the rate, is irrelevant for purposes of the filed rate doctrine.  Schilke v. Wachovia Mortgage, FSB, 705 F. Supp.2d 932, 943 (N.D. Ill. 2010) (internal citations omitted), vacated on other grounds, 758 F. Supp.2d 549 (2010).  Many state and federal courts have applied the filed rate doctrine to state regulation of health insurance, where the agency regulates rates submitted by insurers based on statutory and regulatory provisions rather than on public comment.  E.g., Clark, 736 F. Supp.2d 902, 915-16 (describing New Jersey health insurance regulation and listing other cases applying doctrine).[3]  Kansas law prohibits unreasonable, excessive or unfairly discriminatory LTC rates.  K.S.A. § 40-2215(d)(1).  Insurers file proposed premium rates, the insurance commissioner reviews them, and the insurer is permitted to collect only those premiums which the commissioner approves.  See K.S.A. §§ 40-1-9, 40-2215, 40-2228.  The

---

[2]  If the doctrine applies, it prevents plaintiff from enforcing contract or tort rights that contradict the rate.  No exception exists for allegations of fraud because the result still would be discriminatory.  See Wegoland, 27 F.3d at 21; Clark v. Prudential Ins. Co. of Am., 736 F. Supp.2d 902, 913-14 (D.N.J. 2010) (doctrine applied to claim by purchasers of health insurance policies that insurer had stopped selling to new policyholders, resulting in higher claim rates that would ultimately cause such high premiums that policyholders would be forced to drop policies).

[3]  Plaintiff cites In re Express Scripts, Inc., Pharmacy Benefits Mgmt. Litig., 2007 WL 1796224 (E.D. Mo. June 20, 2007), as an example of a case beyond the scope of the filed rate doctrine because the premiums were not determined by a legislative rate-making scheme.  The case is wholly distinguishable, as the state agency at issue was acting only as an employer negotiating contractual pharmacy prescription benefits for its employees, and no regulatory body was involved.

Case 2:11-cv-02034-KHV-DJW   Document 32   Filed 01/25/12   Page 7 of 9


insurer must give each applicant a statement of renewal provisions, including any reservation of the insurer's right to change premiums. K.S.A. § 40-2228(g)(1)(C). If the Court were to award damages to plaintiff, the calculation would require the Court to determine what rates were reasonable in 2001, 2004 and 2005. Such an exercise would interfere with the commissioner's rate-making process, which violates the non-justiciability strand of the filed rate doctrine.[4]

The Court concludes that the filed rate doctrine applies to this case.

## II. Documents Attached to Defendant's Motion

To its motion, defendant appended a number of exhibits that contain documents extraneous to the pleadings. Plaintiff objects, arguing that the Court should not view the documents in considering a Rule 12(b)(6) motion or, if it does, that the Court must treat the motion as one for summary judgment and give the parties a reasonable opportunity to present all material pertinent to the motion. The Court found that it was not necessary to review most of the documents in ruling on this motion, but to the extent that it did so, it will consider plaintiff's objections.

In ruling on a motion to dismiss under Rule 12(b)(6), the Court may consider (1) indisputably authentic copies of documents if plaintiff referred to them in the petition and the documents are central to plaintiff's claims; and (2) facts which are subject to judicial notice. GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997); Rubio v. Turner Unified Sch. Dist. No. 202, 475 F. Supp.2d 1092, 1097 n.7 (D. Kan. 2007). Federal Rule of

---

[4] That plaintiff's claim implicates the non-justiciability strand suffices to invoke the filed rate doctrine. Clark, 736 F. Supp.2d at 913. Thus, the Court need not determine whether the claim also runs afoul of the non-discrimination strand, which protects uniformity in rates among policy holders. A purported class action – which intends to include all of Transamerica's LTC policy holders in Kansas – may present a less compelling case that allowing one claim would result in discriminatory rates for other policy holders. Plaintiff, however, did not raise the issue and case law suggests that it would not succeed. See Amundson, 26 Kan. App. 2d 489, 988 P.2d 1208 (Kansas case adopting filed rate doctrine a class action); Wegoland, 27 F.3d at 21-22 (doctrine applies "whether or not plaintiffs are suing for a class").

Evidence 901(a) states that in general, a document can be authenticated if the proponent produces evidence sufficient to support a finding that the document is what the proponent claims it is. As for public records, evidence that the document was recorded or filed in a public office as authorized by law is sufficient authentication. Fed. R. Evid. 901(b)(7)(A).

Plaintiff acknowledges that the actuarial memoranda which Transamerica filed with the Kansas Insurance Department in support of its rate increase requests are central to his claims, see Plaintiff's Opposition (Doc. #26) at 6, but he disputes the authenticity of the documents. The Court finds that defendant's declarations provide evidence sufficient to support a finding that the actuarial memoranda are authentic. Plaintiff objects to the authenticity[5] and centrality of the remaining documents contained in Exhibits H, I and J to Defendant's Motion (Docs. #24-10, 24-11, 24-12), which comprise Transamerica's rate increase filings and include correspondence between Transamerica and the Insurance Department. The Court finds that defendant's declarations are sufficient to support a finding that the documents are authentic, and because they are the operative documents concerning the rate increases about which plaintiff complains, they clearly are central to plaintiff's claim. Moreover, the Court is entitled to take judicial notice of the documents, as they were filed with the Kansas Insurance Department and are available as public documents. See JP Morgan Trust Co., N.A. v. Mid-America Pipeline Co., 413 F. Supp.2d 1244, 1258 (D. Kan. 2006) (taking judicial notice of public documents filed with Secretary of State); see also Schilke v. Wachovia Mortgage, FSB, 705 F. Supp.2d 932, 941 n.5 (N.D. Ill. 2010) (on motion to dismiss, taking judicial notice of documents filed with Illinois Department of Insurance), vacated on other

---

[5] Despite his professed dispute as to the authenticity of the documents contained in Exhibits H, I and J, plaintiff fails to articulate a basis for his claim. The Court is not favorably disposed towards a makeweight argument.

8

grounds, 758 F. Supp.2d 549 (2010).[6]

Aside from Exhibits H, I and J to Defendant's Motion (Docs. #24-10, 24-11, 24-12), along with the declarations authenticating those documents (Docs. #24-1, 24-14), the Court considered no documents which defendant submitted. As for the documents contained in Exhibits H, I and J to Defendant's Motion (Docs. #24-10, 24-11, 24-12), the Court has exercised its discretion to consider them in ruling the motion, and doing so does not convert the motion to one for summary judgment. See GFF, 130 F.3d at 1385 (rationale that plaintiff entitled to respond dissipates as reason to convert motion to summary judgment where plaintiff on notice of document that is central to claim).

The filed rate doctrine applies to this case and is appropriate for the Court to consider on a motion to dismiss under Rule 12(b)(6). **IT IS THEREFORE ORDERED** that the Motion To Dismiss Plaintiff's Class Action Petition (Doc. #23) which Transamerica filed June 15, 2011, be and hereby is **SUSTAINED**.

Dated this 25th day of January, 2012 at Kansas City, Kansas.

/s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[6] Notably, one of plaintiff's arguments why the Court should not consider defendant's documents provides a textbook illustration of why the filed rate doctrine applies in this case. Plaintiff argues that his allegations relating to known actuarial defects would require expert testimony and review of internal documents as to how lapse assumption, morbidity assumption, mortality assumption and claims projection existed and impacted actuarial statements. Plaintiff's Response (Doc. #26) at 7-8. If the Court were to award damages based on such considerations, the award would amount to "nothing less than the award of a retroactive rate [decrease] based on speculation about what the [Insurance Department] might have done had it been faced with the facts of this case. This . . . is precisely what the filed rate doctrine forbids." Ark. La. Gas Co. v. Hall, 453 U.S. 571, 578-79 (1981).

9